UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

United States Bankruptcy Appellate Panel No. 6:22-cv-01107-RBD
Chapter 13 Bankruptcy Case No.: 6:21−bk-00936-LVV

In re

JEFFREY RENICK HEFNER

Debtor.

---

ISLAND COASTAL CHARTERS LLC and ROBERT MCBRIDE,

Appellants,

v.

JEFFREY RENICK HEFNER

Appellee.

---

## AMENDED APPELLANTS' INITIAL BRIEF
### (To add and correct citations to record and supplement record on appeal)

**Aaron D. Lyons, Esq.**
(FL Bar # 85758)
**Ethan B. Babb, Esq**.
(FL Bar # 127488)
Lacey Lyons Rezanka
6023 Farcenda Place, Ste. 102
Melbourne, FL 32940
(321)608 0890
*Attorneys for Appellants*

## Table of Contents

I.     TABLE OF AUTHORITIES ...................................................................3

II.    PRELIMINARY STATEMENT .............................................................4

III.   JURISDICTIONAL STATEMENT ........................................................4

IV.    STATEMENT OF ISSUES ...................................................................5

V.     STANDARD OF REVIEW ...................................................................5

VI.    STATEMENT OF THE CASE ..............................................................5

VII.   SUMMARY OF ARGUMENT............................................................18

VII.   ARGUMENT .....................................................................................19

A.     ICC's and McBride's Proofs of Claim established valid "claims" as a matter of law.....................................................................................................19

B.     McBride's Proof of Claim ...............................................................20

C.     ICC's Proof of Claim......................................................................22

D.     Hefner's Objections to ICC's and McBride's Proofs of Claim fail to state any recognizable Objection as a matter of law. ...........................................24

E.     The bankruptcy court erred by finding that Hefner's objections to ICC's and McBride's Proofs of Claim qualified as "objections" even minimally sufficient to require consideration, that Hefner's objections were sufficient to overcome the presumption of validity of ICC's and McBride's Proofs of Claim, and that despite granting ICC's and McBride's Motion to Take Judicial Notice and hearing their testimony, that ICC and McBride failed to meet their burden of proof to overcome Hefner's objections in order to minimally establish their Proofs of Claim within the expansive meaning of "claim" as a matter of law...........................................27

VIII.  CONCLUSION.................................................................................29

IX.    CERTIFICATE OF FONT COMPLIANCE....................................................31

X.     CERTIFICATE OF SERVICE .................................................................32

## I.    TABLE OF AUTHORITIES

**Cases**

*Adams v. Coveney* (*In re Coveney*), 217 B.R. 362, 363 (D. Mass.), *aff'd*, 162 F.3d
   23 (1st Cir. 1998) ................................................................................4

*Bertelt*, 206 B.R. 587 (Bankr.M.D.Fla.1996) .................................................... 23, 26

*Braniff Airways v. Exxon*, 814 F.2d 1030, 1036 (5th Cir. 1987)............................19

*Friedman*, 436 F.Supp. 234, 237 (D.C.Md.1977) .......................................... 23, 26

*Malden Mills Indus., Inc. v. Maroun* (*In re Malden Mills Indus., Inc.*), 303 B.R.
   688, 696 (B.A.P. 1st Cir. 2004) ................................................................4

*McCoy*, 163 B.R. 206, 209 (Bankr.M.D.Fla.1994) ........................................ 23, 26

*Oxford Mgmt., Inc.*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ...................................18

*Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008); Rule 8013, Fed. R. Bankr. P..5

*Stewart Foods, Inc.*, 64 F.3d 141, 146 (4th Cir. 1995)...........................................18

*United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993)..................................19

*Wright v. Holm* (In re Holm), 931 F.2d 620, 623 (9th Cir.1991) ...........................26

*Zamel*, 619 F.3d 156, 161 (2d Cir. 2010) .................................................................4

**Statutes**

11 U.S.C § 523 .............................................................................................................6

11 U.S.C § 727 .............................................................................................................6

11 U.S.C. § 101(5). ....................................................................................................18

11 U.S.C. s. 502. ........................................................................................................15

28 U.S.C. § 158(a) .......................................................................................................4

## II.    PRELIMINARY STATEMENT

Appellants/Creditors, ISLAND COASTAL CHARTERS, L.L.C. and ROBERT MCBRIDE, are referred to herein respectively as, "ICC," "McBride," "Creditors" or "Appellants" and Appellee/Debtor, JEFFERY RENICK HEFNER, is referred to herein as "Hefner," "Debtor" or "Appellee." Citations to the Record on Appeal or Supplemental Record are designated with a parenthetical including the abbreviation "R." or "R. Supp." and in some instances, with the paragraph number within a referenced document. For example, a citation to paragraph 5 of a document found at page 100 of the Record on Appeal would appear as: (R.100 ¶5). The index referred to herein of the Record on Appeal is attached hereto as Appendix A.

## III.    JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), as this appeal is from a final order of the bankruptcy court. A bankruptcy court order sustaining an objection to a proof of claim is a final, appealable order. *Malden Mills Indus., Inc. v. Maroun* (*In re Malden Mills Indus., Inc.*), 303 B.R. 688, 696 (B.A.P. 1st Cir. 2004); *Adams v. Coveney* (*In re Coveney*), 217 B.R. 362, 363 (D. Mass.), *aff'd*, 162 F.3d 23 (1st Cir. 1998).

## IV.    STATEMENT OF ISSUES

The issue on appeal is whether the bankruptcy court erred as a matter of law and abused its discretion when it sustained Debtor's objections to Creditor's Proofs of Claim and disallowed Creditor's Proofs of Claim.

## V.    STANDARD OF REVIEW

A bankruptcy court's legal conclusions are reviewed de novo. *In re Zamel*, 619 F.3d 156, 161 (2d Cir. 2010). Its factual determinations are reviewed for clear error. *In re Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008); Rule 8013, Fed. R. Bankr. P.

## VI.    STATEMENT OF THE CASE

On March 3, 2021, Hefner filed his petition for individual bankruptcy protection under Chapter 13 (excluding his wife) (Petition, R.55) in order to avoid the final evidentiary hearing to enforce the judgment and enforcement order on injunctive relief scheduled for March 8, 2021, in the post-judgment proceedings of Jeff Hefner v. John MacDonald, Robert McBride and Island Coastal Charters, LLC, with intervenor parties JRH Avgroup, Inc., Cherokee Wings, LLC and Victoria's Wings, LLC, Case No. 05-2017-CA-038748, in the Circuit Court in and for the Eighteenth Judicial Circuit in and for Brevard County, Florida. (Creditor's Response

in Opposition to Debtor's Objection to Proof of Claim, Exhibit 1, R.189-321.) The underlying state court action had been ongoing for over four (4) years.

Despite that Hefner initiated bankruptcy proceedings in order to avoid the pending efforts in the state court proceedings to enforce the final judgment and injunction and to collect the significant debts now at issue, Hefner strangely identified the debt owed to ICC in his bankruptcy petition with a value of "$1" and identified no assets related to his status as a member of ICC. (Petition, R.30 ¶ 4.11, ¶ 4.12).

Following Hefner's initiation of bankruptcy proceedings, Creditor, Island Coastal Charters, timely filed a Proof of Claim (Proof of Claim, R.75-122), and Creditor, McBride subsequently filed a Proof of Claim (Proof of Claim, R.123-169) Amended Claim (Proof of Claim, R.170-173). Hefner filed Objections to the initial Proofs of Claim, but not to the subsequent Amended Proof of Claim. (Objections, R.174-181). Additionally, Creditors also initiated an adversarial proceeding within the bankruptcy, Adversary Proceeding No. 6:21-ap-00095-LVV, providing detailed factual allegations in addition to reiterating the findings set forth in the arbitration award, final judgment and order enforcing the state court injunction, in support of claims under 11 U.S.C § 523; and 11 U.S.C § 727 detailing the fraud and fraudulent transactions in which Hefner engaged from the inception of the creation of Island

Coastal Charters, L.L.C., which created the debts at issue. (Adversary Complaint, R.Supp. 1-16).

In summary, as set forth in the Proofs of Claim and Adversarial Proceeding, Hefner, John MacDonald (MacDonald) and Robert McBride (McBride) formed Island Coastal Charters, L.L.C. on or about March 17, 2016. (Proof of Claim, R.75-122)(Proof of Claim, R.123-169)(Proof of Claim, R. 170-173)(Adversarial Complaint, R. Supp. 1-16.

ICC was created to be a multi-service business venture composed of five (5) aircraft companies: Island Coastal Charters, L.L.C. (as Bahamas charter service and parent company), Flying Tigers Aviation, Inc./LLC (flight lessons), View From Above, Inc./LLC (fly and dine charters), Florida Barnstormers, Inc./LLC (bi-plane rides) and Old Pelican Aero, Inc./LLC (aircraft mechanic services) (Flying Tigers, View from Above, Florida Barnstormers, and Old Pelican Aero are also referred to as the Original Companies). (Proof of Claim, Exhibit 1, Award R.84) (Proof of Claim, Exhibit 1, Award R.128)(Amended Proof of Claim, Award, R. 81) (Adversarial Complaint, R.Supp. 1-31).

McBride and Hefner were preexisting equal owners of the Original Companies and their assets. Id. The primary assets of or related to the Original Companies were three (3) aircraft, a Cherokee 180, Waco and Cherokee VI, Id., as well as two golf carts, aircraft mechanics tools, and other incidental items. (Proof

of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

Hefner, McBride and MacDonald were each intended to be 1/3 share owner-managers of ICC based upon intended capital contributions valued at $150,000 each, with the $150,000 each from Hefner and McBride intended to be derived from the value of Hefner's and McBride's preexisting 50/50 ownership of the Original Companies, the three (3) aircraft and related assets being transferred to ICC.  (Proof of Claim, Exhibit 1, Award R.84) (Proof of Claim, Exhibit 1, Award R.128)(Amended Proof of Claim, Award, R. 81) (Adversarial Complaint, R.Supp. 1-31)..

In reliance upon the parties' agreement, MacDonald contributed $150,000 in cash into ICC's account. However, despite affirmatively representing to both MacDonald and McBride that he would transfer the Original Companies, the three (3) aircraft and assets to ICC, Hefner did not intend to do so, and did not do so. Hefner retained control over the Original Companies, the three (3) aircraft and related assets, further fraudulently misleading MacDonald and McBride that the transfer of the Original Companies and assets was completed by showing MacDonald and McBride that he now identified them each as officers of the Original Companies on the Florida Secretary of State Division of Corporations website. Id. Having successfully mislead both MacDonald and McBride into believing that ICC

now owned the Original Companies, the three (3) aircraft and related assets, Hefner further solicited MacDonald to commence a series of cash payments into ICC's account to cover monthly operating expenses, which ultimately totaled $949,808. (Proof of Claim, Exhibit 1, Award R.84) (Proof of Claim, Exhibit 1, Award R.128)(Amended Proof of Claim, Award, R. 81) (Adversarial Complaint, R.Supp. 1-31).

Unknown to MacDonald and McBride, in addition to not transferring the Original Companies, the three (3) aircraft and related assets to ICC, Hefner also transferred out of ICC's account all of the business income and payments from MacDonald into unknown accounts over which Hefner had exclusive control, while maintaining exclusive control over the Original Companies' accounts and withholding access to all records, leaving MacDonald and McBride unable to conduct an accounting and the arbitrators subsequently unable to conduct an accounting.[1]  (Proof of Claim, Exhibit 1, Award R.84) (Proof of Claim, Exhibit 1, Award R.128)(Amended Proof of Claim, Award, R. 81) (Adversarial Complaint, R.Supp. 1-31).

The following findings of fact are set forth in the arbitration award and final judgment thereon:  Hefner "improperly removed and retained possession of certain

---

[1] Discovery was ongoing in the Adversarial Proceeding regarding the location of accounts and Hefner's transfers of cash out of the ICC account in preparation to conduct a forensic accounting at the time of the bankruptcy court's order sustaining Debtor's objections to ICC's and McBride's Proofs of Claim.

property of ICC", (See generally, Award R.100 ¶ 2), specifically including "hiding aircraft owned by subsidiaries of ICC," Id., that Hefner's solely owned company "JRH Avgroup" improperly retained possession of the Cherokee 180, Id., and that "he transferred the Waco and Cherokee VI aircraft from Florida Barnstormers to JRH, for no consideration due to the threat of litigation from MacDonald...without consent from any other owner or manager..." Id. footnote 3. Consistent with these factual findings, the arbitrators unanimously issued an injunction requiring Hefner to return all such property to ICC. Id.

The following findings of fact and orders are set forth in the state circuit court's subsequent Order Granting Motion to Enforce Judgment and Injunction or to Show Cause Why Plaintiff Should Not Be Held in Contempt (the "Enforcement Order"), following an evidentiary hearing:

Hefner was ordered to deliver to ICC all property belonging to ICC within Hefner's possession, custody, or control as follows:

Hefner was directed to deliver to ICC the Cherokee 180, Waco, and Cherokee VI aircrafts, as well as any of the other six (6) aircrafts described in the Court's February 14, 2019, Final Judgment within his possession, custody, or control, within thirty (30) days of April 25, 2019. (Order ¶ 2(a) (Proof of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

10

Hefner was directed to deliver to ICC all of ICC's books, records, and logbooks, including the books, records, and logbooks of each of the "Original Companies" owned by ICC (i.e., Flying Tigers Aviation, Inc./LLC, View from Above, Inc./LLC, Florida Barnstormers, Inc./LLC, and Old Pelican Aero, Inc./LLC), within ten (10) days of April 25, 2019. (Order ¶ 2(b) (Proof of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

Hefner was directed to deliver to ICC all other physical property belonging to ICC or the Original Companies, including the two golf carts described in the April 24, 2019, Affidavit of Robert McBride, within twenty (20) days of April 25, 2019. (Order¶ 3) (Proof of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

Hefner was directed to immediately remove any and all existing advertisements for the sale of any ICC property, including the Cherokee 180, Waco, Cherokee VI, and any of the other six (6) aircraft described in this Court's Final Judgment, and is further enjoined from selling, attempting to sell, finalizing any pending sale, advertising for sale, transferring, encumbering, or otherwise alienating same and/or any other property belonging to ICC or the Original Companies. (Order ¶ 4) (Proof of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

To the extent already sold or transferred any of the six (6) aircraft listed in this Court's Final Judgment to third parties, Hefner was directed to take all necessary actions to preserve those aircraft and ensure their delivery to ICC, including notifying the third parties of this Order and of their duty to preserve the aircraft. To the extent those aircraft could not be preserved or produced to ICC due to the past sale or transfer by Hefner, Hefner was directed to preserve the proceeds collected from any such sale, or the cash value of the aircraft as set forth in the Final Judgment, for delivery to ICC. (Order ¶ 5) (Proof of Claim, Order, R.92)(Proof of Claim, Order, R. 139)(Amended Proof of Claim, Order, R-182)(Adversary Complaint, Order, R.Supp. 1-31).

It is undisputed that Hefner did not comply with the state court's forgoing enforcement order.  Instead, having sold the Cherokee VI and Waco to third parties, he kept the proceeds of the sale but failed to identify such proceeds in his bankruptcy petition, then dismantled and parted out the Cherokee 180, listing the same as an asset valued at only $8,400 on his bankruptcy petition. (Petition, R.15).

It is also remarkably notable that throughout the post-judgment proceedings in state court and even in the present underlying bankruptcy, Hefner took and continues to take the position that he simply disagrees with the arbitration award, the state court's final judgment, the state court of appeals' affirmance of the final judgment, and the state court's Enforcement Order and that he was always entitled

to defy the award, judgment and orders of the court by treating the Original
Companies and their assets including the three (3) aircraft as his sole property from
the inception, irrespective of McBride's fifty percent preexisting ownership of the
same, and despite the blatant appearance that the repeated manipulation of the
officers of the Original Companies and transfers and sales of the aircraft correlates
with avoiding the proceedings, judgment, and orders against him. (Adversary
Complaint, R.Supp.3¶1; R.Supp.3¶2); (Debtor's Motion for Reconsideration R.182-
188) and (supporting exhibits R.189-501).

It is important to note that the arbitration hearing and arbitration award, as
reflected by the proceeding itself, occurred early in the dispute between Hefner,
MacDonald and McBride, while ICC was still operating, while Hefner was still a
managing member, to first and foremost resolve the management conflict created by
Hefner's exercise of management power over ICC. An accounting could not be
performed even by the arbitrators due to Hefner' control over the books and records
of the Original Companies. (See generally, Award, p. 7))(Proof of Claim, Exhibit 1,
Award R.84) (Proof of Claim, Exhibit 1, Award R.128)(Amended Proof of Claim,
Award, R. 81) (Adversarial Complaint, R.Supp. 1-31).   Ultimately, relief was
granted in the form of relieving Hefner of his managing member status, and ordering
Hefner to return to ICC control over the Original Companies and their assets,
because until that time, Hefner maintained – albeit unauthorized and illegal – control

over the Original Companies, their books and records, and their assets.  Contrary to the continuous and strained misinterpretation of the arbitration award as some sort of defective final money judgment by Hefner's subsequent counsel and adopted by the bankruptcy court, the arbitration award made critical and specific ***findings of fact*** on the merits, but the relief granted was in the form of injunctive relief, rather than a final judgment, at a time when return of control of the Original Companies and their assets was possible, and Hefner had not yet completely liquidated and converted the assets of the Original Companies.  Now, Hefner has completely liquidated and converted the assets of the Original Companies, and the remaining, necessary allegations and causes of action to prove Hefner's egregious pattern of fraud was and is set forth in the Creditor's Adversary Complaint, still in the discovery stage, and awaiting to be proven at a full trial on the merits. See Adversary Complaint, R.Supp. 1-16.

The foregoing facts formed the summary record basis and testimony for and support of ICC's Proof of Claim in the amount of $150,000 – this was the amount of money that Hefner agreed to contribute as his capital contribution, *fraudulently convinced ICC and its other members that he did contribute the same by way of transferring ownership of the Original Companies and their assets to ICC*, upon which ICC and its members relied to their detriment, but that Hefner in fact never intended to transfer the Original Companies, and instead liquidated and converted

all of the assets thereof for his own benefit.  In reliance upon Hefner's fraud, ICC took on loan liability of $949,806, thus ICC claimed the additional amount of $316,602, as Hefner's 1/3 share of Hefner's unaccounted for transfer of over $1,000,000 in revenue and loan proceeds that would not have occurred but for ICC's, MacDonald's and McBride's reasonable reliance upon Hefner's fraudulent misrepresentations.

Likewise, the foregoing facts formed the summary record basis and testimony for and support of McBride's Proof of Claim and Amended Proof of Claim, both in the amount of $150,000, for Hefner's conversion of McBride's 50% ownership interest in the Original Companies and their assets valued at $150,000, which Hefner facilitated by fraudulently representing to McBride that he, Hefner, transferred McBride's 50% ownership interest along with his own 50% ownership interest in the Original Companies and their assets to ICC as their capital contributions, while Hefner liquidated and converted all of the assets of the Original Companies for his own benefit.

Hefner's Objection to [ICC's] Proof of Claim (Objection R.174-178), is largely indecipherable, but makes the following, apparent objections to the adequacy of ICC's (Proof of Claim R.75-122): "Merriam-Webster defines a capital contribution as 'a contribution of funds or property to the capital of a business by a partner, owner, or shareholder.'" (Objection R.174-178 ¶ 7).  And therefore, "The

$150,000.00 is money that would be owed to the Debtor which he contributed to the Creditor." (Objection R.174-178 ¶ 7). "Final Award of Arbitrators, section Award, item 7 (Claim, Exhibit 1, Award R.91) states: 'Hefner is hereby disassociated as a member of ICC. Hefner does not owe any member share of an outstanding debt. ICC by its own actions during arbitration removed Hefner as a member." (Objection R.174-178 ¶ 7). The foregoing does not make sense let alone qualify as an "objection" as even arguably contemplated by 11 U.S.C. s. 502.

Hefner's Objection to [McBride's] Proof of Claim (Proof of Claim R. 75-122; Amended Proof of Claim R.170-173), is virtually identical, and merely claims that: "Hefner, McBride and Macdonald each own one-third of ICC, and each have a capital account equal to $150,000." (Objection R.179-181 ¶ 5). "Merriam-Webster defines a capital contribution as 'a contribution of funds or property to the capital of a business by a partner, owner, or shareholder.'" (Objection, R.179-181 ¶ 7). And therefore, "The $150,000.00 is money that would be owed to the Debtor which he contributed to the Creditor." (Objection, R.179-181 ¶ 8). Once more, the foregoing does not make sense let alone qualify as an "objection" as even arguably contemplated by 11 U.S.C. s. 502.

ICC and McBride filed a Motion to Take Judicial Notice and Apply Collateral Estoppel, requesting the bankruptcy court to take judicial notice of the official proceedings in the arbitration and the state court and to apply collateral estoppel to

specific holdings therein as the parties were identical, the proceedings involved the identical issues, which were fully and fairly litigated on the merits, before a court of competent jurisdiction (Motion to Take Judicial Notice R.544-547). The bankruptcy court granted the motion without further explanation (Order Granting Motion to take Judicial Notice, R.583-584) but conducted an evidentiary hearing anyway. See generally (Transcript R.596-683).

The bankruptcy court found that Hefner's objections were adequate to shift the burden of proof to ICC and McBride without explanation, leaving counsel uncertain as to what legal or evidentiary assertion in Hefner's objections required rebuttal (since there is none).   (Transcript, R.602 ¶ 6).   ICC, MacDonald and McBride nevertheless summarily put on the same evidence at the hearing as is reflected in the findings of the arbitration award, state court, and in the record, in support of the values attributed to the claims created by Hefner's fraudulent activities – Hefner's liquidation and conversion of the Original Companies and the assets thereof, as well as of the revenue and loan deposits to ICC's operating accounts. (Transcript, R.596-683).

The bankruptcy court ultimately sustained Hefner's objections, ignoring the deficiency thereof, ignoring the allegations and claims set forth and as yet to be tried in the Adversary Proceeding, and adopting Hefner's new counsel's circuitous and erroneous argument that the *sole basis* for McBride's and ICC's Proofs of Claim

was the limited relief granted by the arbitration award, which, by itself, clearly did not produce a liquidated money judgment against Hefner in the amounts claimed in ICC's and McBride's Proofs of Claim. (Order Sustaining Objections R.585-595).

## VII.    SUMMARY OF ARGUMENT

The bankruptcy court erred as a matter of law in sustaining Hefner's Objections to ICC's and McBride's Proofs of Claim.  ICC's and McBride's Proofs of Claim met the definitions of "debt" and "claim."  Hefner's Objections to ICC's Proofs of Claim did not meet the definition of "objection" and were wholly insufficient to overcome the presumption of validity and shift the burden of proof to ICC and McBride. The bankruptcy court further deviated from the essential requirements of law by going beyond Hefner's Objections to find that ICC and McBride did not meet their burden of proof to overcome the non-existent evidentiary challenge raised by Hefner's Objections, and ignoring that the bases of ICC's and McBride's Proofs of Claim were the factual findings set forth in the arbitration award and state court proceedings, as well as the additional facts and claims alleged in the still pending Adversary Proceeding, rather than the oversimplified and mischaracterized issue of whether the arbitration award rendered a liquidated money judgment against Hefner that would support a proof of ICC's and McBride's claims.

## VII.   ARGUMENT

### A. ICC's and McBride's Proofs of Claim established valid "claims" as a matter of law.

A "claim" in bankruptcy is defined as: (A) a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.  11 U.S.C. § 101(5).  "Debt" is defined as a liability on a claim. 11 U.S.C. § 101(12).  Congress intended that the meanings of "debt" and "claim" be coextensive.  *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990).  "Congress intended . . . to adopt the broadest available definition of 'claim'."  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

A "claim" arises regardless of enforcement efforts (i.e., future litigation) or of whether the claim is contingent, unliquidated, or unmatured when the petition is filed.  See *In re Stewart Foods, Inc.*, 64 F.3d 141, 146 (4th Cir. 1995) ("[T]hat the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations."); *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ("A claim

is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition."); *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993) ("[D]ependency on a postpetition event does not prevent a debt from arising prepetition."); *Braniff Airways v. Exxon*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from pre-petition to post-petition simply because it is contingent, unliquidated or unmatured when the debtor's petition is filed.").

## B. McBride's Proof of Claim

McBride's Proof of Claim (and Amended Proof of Claim to which no objection was filed) fairly established a claim valued at $150,000 by McBride against Hefner, by virtue of McBride's and Hefner's uncontested 50/50 ownership interest in the Original Companies and their assets[2], and Hefner's uncontested subsequent conversion of the entirety of the assets of the Original Companies,[3] depriving McBride of his 50% ownership of the same, and McBride's obligation to ICC for contribution of the same.  The fact that Hefner's intentional conversion of

---

[2] "[I]t is uncontested that each of the Original Companies was owned at the time of [ICC's] formation 50% by Hefner and 50% by McBride." (Award, R.83 ¶1).  "McBride and Hefner made their capital contributions to ICC by a contribution of their 50% interest in each of the Original Companies, and that these interests were valued at $150,000 each, primarily as a result of the Original Companies' ownership of certain aircraft." (Award, R.89 ¶2)

[3] Hefner seemingly ignores McBride's 50% ownership and continues to claim in these proceedings that he always had the exclusive ownership of the Original Companies and their assets in support of his fraudulent conversion and transfer of 100% of the assets for his own use.  See e.g., (Motion for Reconsideration R.182-501).

McBride's 50% interest in the Original Companies occurred during Hefner's fraudulent misrepresentations that he intended to and did transfer the Original Companies and their assets to ICC upon ICC's formation as McBride's and Hefner's capital contributions, upon which ICC, MacDonald and McBride relied to their detriment and is therefore due and owing to ICC, this scenario does not convert the entire basis of McBride's claim into a vacuously simplistic argument regarding an unfunded but promised "capital contribution." Likewise, the fact that the arbitration award and subsequent state court proceedings were still at the early stage of injunctive relief to retrieve or protect property (books, records, airplanes, and other assets of the Original Companies) within Hefner's sole control does not change the basis of McBride's present claim: Hefner's admitted conversion of McBride's 50% ownership of the Original Companies' assets which the parties valued at $150,000. While McBride as a member of ICC owes ICC the $150,000 contribution that he intended to make, it was Hefner that converted and deprived McBride of his $150,000 asset interest in the Original Companies. McBride's Proof of Claim fairly met the definition of "claim" as a matter of law, and the foregoing evidence fairly established it.

Additional discussion of the circumstances and context of the arbitration hearing, award, state court judgment and enforcement proceedings pending at the time that Hefner sought bankruptcy protection from them, and the present context

and circumstances of the basis for McBride's Proof of Claim and pending Adversarial Proceeding is set forth below.

### C. ICC's Proof of Claim

ICC's Proof of Claim fairly established a "claim" in the amounts of $150,000 and $316,602, respectively, against Hefner. $150,000 was the admitted value of Hefner's 50% share of the Original Companies' assets[4], which Hefner fraudulently represented to ICC, McBride and MacDonald that he *intended to and did contribute to ICC* by way of transferring ownership of the Original Companies and their assets to ICC, upon which ICC and its members admittedly relied to their detriment.[5] Again, the reference to "capital contribution" within this transaction does not simplistically convert the entirety of the transaction into a merely voluntary "capital contribution" for which there is no obligation. As we now know, Hefner in fact never intended to transfer the Original Companies and their assets to ICC for McBride's benefit or for the benefit of ICC[6], instead retaining control from the inception over the Original Companies and retaining or transferring title to the assets in or to various

---

[4] See footnote 2.
[5] "The overwhelming weight of the evidence demonstrates that the parties' believed and acted as if each of the Individual Parties had a direct and indirect ownership interest in each of the Original Companies." (Award R.85 ¶ 1).
[6] This and the other fraud issues are raised and pending for resolution in the Adversary Complaint.

other shell companies controlled by Hefner,[7] for the purpose of obtaining the detrimental reliance of ICC, MacDonald and McBride.

At the time of the arbitration, in 2018, the arbitrators, ICC, MacDonald and McBride reasonably believed that Hefner still had control over Original Companies and their assets sufficient to require Hefner to transfer the same – books, records, property and the three (3) aircraft at issue – to ICC, as was further clarified by the Enforcement Order in state court.[8] The state court proceedings were ongoing with respect to the effect of Hefner's non-compliance with the injunctions and apparent liquidation for his own benefit of the three (3) aircraft at issue.  However, Hefner's retention, liquidation and conversion of all of the assets of the Original Companies began prior to any transfer to ICC by Hefner's own admissions[9].

ICC, McBride and MacDonald relied to their detriment upon Hefner's asset transfer representations by starting and funding ICC and ICC taking on debt in the form of operational loans from MacDonald totaling $949,808. Since the asset

---

[7] "Hefner testified that he transferred the Waco and Cherokee VI aircraft from Florida Barnstormers to JRH, for no consideration due to the threat of litigation from MacDonald. Hefner further testified that JRH is wholly owned by Hefner and his wife, and that he transferred the aircraft without consent from any other owner or manager of Florida Barnstormers [one of the Original Companies]." (Award R.84 ¶ 2).

[8] See (Award R.84¶1); (Enforcement Order R.97¶3) ("Mr. Hefner is directed to deliver to ICC the Cherokee 180, Waco and Cherokee VI aircrafts…").

[9] Hefner provides copious evidence that he retained 100% control over the assets of the Original Companies in support of his position that he was simply always entitled to do so, as though the arbitration, judgment, injunctions, and state court proceedings from which he fled to bankruptcy never existed. See Hefner's (Motion for Reconsideration, R.182-188). Hefner likewise claims the now destroyed and parted out Cherokee 180 as one of his assets in his bankruptcy petition, but irreconcilably does not claim the non-existent "capital contribution" to ICC as an asset or the consideration received through the sale of the Cherokee VI and Waco to alleged third parties.  See (Petition, R.1-74).

transfer never occurred, company liquidated and converted all of the assets thereof for his own benefit.  In reliance upon Hefner's fraud, ICC took on loan liability of $949,808 to operate, thus ICC claimed the additional amount of $316,602, as Hefner's 1/3 share of Hefner's unaccounted for transfer of not only the total loan amount of $949,808, but over $1,000,000 in combined income that would not have occurred but for ICC's, MacDonald's and McBride's reasonable reliance upon Hefner's fraudulent misrepresentations. Again, McBride's and ICC's Proofs of Claim are in and of themselves limited explanations of the foregoing claims, which are inextricably intertwined with the additional allegations and claims set forth in the Adversarial Proceeding, which awaits completion of discovery and a full trial on the merits.  Based upon the expansive and liberal definition of "claim," ICC fairly established its Proof of Claim.

### D. Hefner's Objections to ICC's and McBride's Proofs of Claim fail to state any recognizable Objection as a matter of law.

Because of the presumptive status in Rule 3001(f), the objecting party bears the initial burden of proof, by an affirmative presentation supporting the objection in order to overcome the prima facie validity of the creditors' claims. *In re McCoy*, 163 B.R. 206, 209 (Bankr.M.D.Fla.1994), see also, *In re Bertelt*, 206 B.R. 587 (Bankr.M.D.Fla.1996). The objecting party must present "some evidence" meant to contradict the proof of claim, upon which the Bankruptcy Court then must weigh the

evidence presented against the prima facie evidence presented by the creditor's proof of claim and any additional evidence presented by the creditor. *In re Friedman*, 436 F.Supp. 234, 237 (D.C.Md.1977).

Hefner's nearly identical Objections to McBride's and ICC's Proofs of Claim do not proffer any recognizable legal or factual "objections" to the substance of McBride's and ICC's Proofs of Claim. Hefner's Objection to [ICC's] (Objection R.174-178) but makes the following "objections" to the adequacy of ICC's (Proof of Claim R.75-122): "Merriam-Webster defines a capital contribution as 'a contribution of funds or property to the capital of a business by a partner, owner, or shareholder.'" (Objection R.174-178 ¶ 7). And therefore, "The $150,000.00 is money that would be owed to the Debtor which he contributed to the Creditor." (Objection R.174-178 ¶ 7). "Final Award of Arbitrators, section Award, item 7 (See Award R.7) states: 'Hefner is hereby disassociated as a member of ICC. Hefner does not owe any member share of an outstanding debt. ICC by its own actions during arbitration removed Hefner as a member." (Objection R.174-178 ¶ 7).

Hefner's Objection to [McBride's] Proof of Claim is virtually identical, and again merely intones that: "Hefner, McBride and MacDonald each own one-third of ICC, and each have a capital account equal to $150,000." (Objection R.179-181 ¶ 5). "Merriam-Webster defines a capital contribution as 'a contribution of funds or property to the capital of a business by a partner, owner, or shareholder.'" (Objection

R.179-181 ¶ 7) and therefore, "The $150,000.00 is money that would be owed to the Debtor which he contributed to the Creditor." (Objection R.179-181 ¶ 8).

ICC and McBride filed responses in opposition to Hefner's Objections, identifying their legal and factual deficiencies.  See Objection, McBride (Amended Claim R.170 – 173); (Objection Proof of Claim R.179 – 181).

First, if Hefner's "objection" that, "The $150,000.00 is money that would be owed to the Debtor which he contributed to the Creditor," is in good faith, he would have identified his "capital contribution" as an asset in his bankruptcy petition, but he did not.

The only other "objection" asserted by Hefner in regard to ICC's claim was: "Final Award of Arbitrators" (See Award R.7) states: 'Hefner is hereby disassociated as a member of ICC.  Hefner does not owe any member share of an outstanding debt. ICC by its own actions during arbitration removed Hefner as a member." (Objection R.174-178 ¶ 7).  Despite that this "objection" does not fairly address the substance of ICC's claim in any apparent way, the suggestion that disassociating a member of an LLC thereafter exempts the disassociated member from preexisting liabilities is simply false. *Florida Statutes* § 605.0603(2) ("A person's dissociation as a member does not, of itself, discharge the person from a debt, obligation, or other liability to the company or the other members which the person incurred while a member.").

**E. The bankruptcy court erred by finding that Hefner's objections to ICC's and McBride's Proofs of Claim qualified as "objections" even minimally sufficient to require consideration, that Hefner's objections were sufficient to overcome the presumption of validity of ICC's and McBride's Proofs of Claim, and that despite granting ICC's and McBride's Motion to Take Judicial Notice and hearing their testimony, that ICC and McBride failed to meet their burden of proof to overcome *Hefner's objections* in order to minimally establish their Proofs of Claim within the expansive meaning of "claim" as a matter of law.**

It defies all reason that Hefner's foregoing "objections" could be interpreted to fulfill Hefner's initial burden of proof, by an affirmative presentation supporting the objection, in order to overcome the prima facie validity of ICC's and McBride's claims. *In re McCoy*, 163 B.R. 206, 209 (Bankr.M.D.Fla.1994), see also, *In re Bertelt*, 206 B.R. 587 (Bankr.M.D.Fla.1996); *In re Friedman*, 436 F.Supp. 234, 237 (D.C.Md.1977). The presumption may be overcome by the objecting party only if it offers evidence of equally probative value rebutting that offered in the proof of claim. See *Wright v. Holm* (In re Holm), 931 F.2d 620, 623 (9th Cir.1991). "The burden of proof on an objection to claim is a shifting one depending on whether the presumptive validity of the claim has been rebutted and *whether the particular objection constitutes an affirmative defense* under applicable state law." *In re Eddy*, 572 B.R. 774, 779 (Bankr. M.D. Fla. 2017) Citing *In re Bavelis*, 490 B.R. 258, 308 (Bankr. S.D. Ohio 2013); *In re White*, 168 B.R. 825, 829 (Bankr. D. Conn. 1994)."

Upon review of Hefner's "objections," they do not fairly constitute "objections" let alone "some evidence meant to contradict the proofs of claim,"

"evidence of equally probative value," or "an affirmative defense," and they certainly are not sufficient to "overcome the prima facie validity" of the claims. Even assuming *arguendo* that *somehow* the burden of proof shifted to ICC and McBride, the bankruptcy court could not, as a matter of law, conclude that ICC and McBride did not provide evidence sufficient to rebut *Hefner's stated objections,* and establish that their claims fairly met the expansive and minimal definition of a "claim."

In preparation for the evidentiary hearing set by the bankruptcy court on Hefner's objections to ICC's and McBride's Proofs of Claim, ICC and McBride filed a Motion to Take Judicial Notice and Apply Collateral Estoppel, requesting the bankruptcy court to take judicial notice of the official proceedings in the arbitration and the state court and to apply collateral estoppel to specific holdings therein as the parties were identical, the proceedings involved the identical issues, which were fully and fairly litigated on the merits, before a court of competent jurisdiction. (Motion to Take Judicial Notice R.502-507). The bankruptcy court granted the motion without further explanation (Order Granting Motion R.583-584) but conducted the evidentiary hearing anyway. See generally, (Transcript R.596-683).

At the hearing, the bankruptcy court found that Hefner's foregoing objections were adequate to shift the burden of proof to ICC and McBride without explanation, leaving counsel uncertain as to what legal or evidentiary assertion in Hefner's

objections required rebuttal (since there is none that are discernable). (Transcript R.601).  ICC, MacDonald and McBride nevertheless summarily put on testimonial evidence at the hearing as is reflected in the findings of the arbitration award, state court, and in the record, in support of the values attributed to the claims created by Hefner's fraudulent activities – Hefner's liquidation and conversion of the Original Companies and the assets thereof, as well as of the revenue and loan deposits to ICC's operating accounts. See generally, (Transcript R.605).

Following the hearing, the bankruptcy court ultimately sustained Hefner's objections, ignoring the deficiency thereof, ignoring that the allegations and claims set forth and as yet to be tried in the Adversary Proceeding, and apparently adopting Hefner's new counsel's circuitous and erroneous argument that the *sole basis* for McBride's and ICC's Proofs of Claim was the limited relief granted by the arbitration award, which, by itself, clearly did not produce a liquidated money judgment against Hefner in the amounts claimed in ICC's and McBride's Proofs of Claim. (Order Sustaining Objections R.585-595).

## VIII.    CONCLUSION

The bankruptcy court erred as a matter of law in sustaining Hefner's Objections to ICC's and McBride's Proofs of Claim.  ICC's and McBride's Proofs of Claim met the definitions of "debt" and "claim."  Hefner's Objections to ICC's Proofs of Claim did not meet the definition of "objection" and were wholly

insufficient to overcome the presumption of validity and shift the burden of proof to ICC and McBride. The bankruptcy court further deviated from the essential requirements of law by going beyond Hefner's Objections to find that ICC and McBride did not meet their burden of proof to overcome the non-existent evidentiary challenge raised by Hefner's Objections, and ignoring that the bases of ICC's and McBride's Proofs of Claim were the factual findings set forth in the arbitration award and state court proceedings, as well as the additional facts and claims alleged in the still pending Adversary Proceeding, rather than the oversimplified and mischaracterized issue of whether the arbitration award rendered a liquidated money judgment against Hefner that would support a proof of ICC's and McBride's claims.

Accordingly, Appellants, ICC and McBride respectfully request this Court to vacate the Order of the bankruptcy court sustaining Appellee's objections to Appellants' Proofs of Claim, and to reinstate Appellants' Proofs of Claim.

## IX.     CERTIFICATE OF FONT COMPLIANCE

I hereby certify that this brief complies with the font requirements of Rule 9.210(a)(2) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14- point font.

Dated: August 31, 2022

LACEY| LYONS| REZANKA

*s/Aaron D. Lyons*
**AARON D. LYONS**
Florida Bar No. 85758

## X.    CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was furnished to counsel for Appellee, Jeffrey S Ainsworth, Esq. and Jacob D. Flentke, Esq. at 1501 E. Concord Street Orlando FL 32803 via e-mail, jeff@bransonlaw.com and jacob@bransonlaw.com ; and to additional parties in interest, Jacob D. Flentke Branson Law PLLC at  1501 East Concord Street Orlando FL 32803 via CM/ECF system. I certify that all participants in the case designated to receive service are registered CM/ECF users and that service will be accomplished by the CM/ECF system on the 31st day of August 2022.

Respectfully submitted,
LACEY| LYONS| REZANKA

*/s/ Aaron D. Lyons*
**AARON D. LYONS**
Florida Bar No. 85758
Email: alyons@llr.law
**ETHAN B. BABB**
Florida Bar No.: 0127488
Secondary: ebabb@llr.law
6023 Farcenda Place Suite 102
Melbourne FL 32940
Tel: (321) 608-0890
Fax: (321) 608-0891

## SCHEDULE A

| Docket File | Date Entered | Docket Text | Page |
|---|---|---|---|
| Doc. 1 | 3/3/2021 | Voluntary Petition Under Chapter 13 | 1-74 |
| Claim 10-1 | 3/30/21 | Proof of Claim by Island Coastal Charters | 75 – 122 |
| Claim 11-1 | 4/01/21 | Proof of Claim by Robert McBride | 123 - 169 |
| Claim 11 | 6/04/21 | Amended Proof of Claim by Robert McBride | 170 – 173 |
| Doc. 17 | 4/22/21 | Objection to Proof of Claim 10-1 | 174 - 178 |
| Doc. 18 | 4/22/21 | Objection to Proof of Claim 11-1 | 179 - 181 |
| Doc. 61 | 7/23/21 | Motion to Reconsider Order on Motion for Contempt | 182 - 188 |
| Doc. 61-1 | 7/23/21 | Exhibit 1 to Motion to Reconsider Order on Motion for Contempt | 189 - 321 |
| Doc. 61-2 | 7/23/21 | Exhibit 2 to Motion to Reconsider Order on Motion for Contempt | 322-410 |
| Doc. 61-3 | 7/23/21 | Exhibit 3 to Motion to Reconsider Order on Motion for Contempt | 411-470 |
| Doc. 61-4 | 7/23/21 | Exhibit 4 to Motion to Reconsider Order on Motion for Contempt | 471- 482 |
| Doc. 61-5 | 7/23/21 | Exhibit 5 to Motion to Reconsider Order on Motion for Contempt | 483 - 492 |

| | | | |
|---|---|---|---|
| **Doc. 61-6** | 7/23/21 | **Exhibit 6 to Motion to Reconsider Order on Motion for Contempt** | **493 - 501** |
| **Doc. 126** | 3/22/22 | **Creditor's Motion Requesting the Court to take Judicial Notice and Apply Collateral Estoppel** | **502-527** |
| **Doc. 130** | 4/12/22 | **Debtor's Response in Opposition** | **528-539** |
| **Doc. 131** | 4/13/22 | **Debtor's Exhibit List** | **540 - 543** |
| **Doc. 132** | 4/13/22 | **Debtor's Motion to Take Judicial Notice** | **544 - 547** |
| **Doc. 139-0** | 4/18/22 | **Debtor's Motion in Limine** | **548 - 550** |
| **Doc. 140-0** | 4/18/22 | **Debtor's Trial Memo** | **551 - 568** |
| **Doc. 141-0** | 4/19/22 | **Creditor's Exhibit List** | **567 - 574** |
| **Doc. 146** | 4/20/22 | **Creditor's Exhibit List (admitted/not admitted)** | **575 - 579** |
| **Doc. 149** | 4/20/22 | **Pro Memo of Hearing on Objections to Proofs of Claim** | **580 - 582** |
| **Doc. 150** | 5/3/22 | **Order Granting Creditor's Motion to Take Judicial Notice** | **583 - 584** |
| **Doc. 152** | 6/9/22 | **Order Sustaining Objections to Claims 10 and 11** | **585 - 595** |
| **Doc.  57 (adversarial proceeding)** | 5/16/22 | **Hearing transcript (on adversarial proceeding docket 6:21- ap-00095-LVV)** | **596 - 683** |
| **R.Supp.** | | **(Adversarial proceeding docket 6:21- ap-00095-LVV)** | |

| **Doc. 2** | **5/28/21** | **Complaint (on adversarial proceeding docket 6:21- ap-00095-LVV)** | **1 - 16** |
|---|---|---|---|
| **Doc. 4** | **6/01/21** | **Exhibit 1 to Complaint (on adversarial proceeding docket 6:21- ap-00095-LVV)**<br>**\*Final Judgement Confirming the Arb.**<br>**(Sub Exhibit A is the arbitration award) - recorded** | **17 - 28** |
| **Doc. 6** | **6/01/21** | **Exhibit 3 to Complaint** | **29 - 31** |

3